UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRADY LEE BELL and RONNELL DUNN,<br><br>Defendants. | Case No. 13-cr-00287-JST-1<br><br>**ORDER DENYING MOTION TO SUPPRESS**<br><br>Re: ECF No. 71 |

Now before the Court is Defendants Ronnell Dunn and Brady Bell's motion to suppress all evidence from the California Highway Patrol's ("CHP") search of the vehicle in which they were travelling at the time of their arrest. The Court concludes that the CHP had reasonable suspicion that the driver of the vehicle had committed a traffic violation, and that the stop and subsequent search were therefore lawful. Accordingly, the Court will deny the motion.

**I.  FACTS**

In the very early morning of January 28, 2013, California Highway Patrol Officers Cyril Ruffin and Michael Ball were on patrol in a marked police car in the River Road area of Highway 101 in Santa Rosa, California. At that hour, the CHP is looking for drivers who are under the influence of alcohol or drugs. Officer Ruffin testified that he often encounters sleepy drivers, impaired drivers, or distracted drivers at that time of the morning.

As part of their regular duties, Officers Ruffin and Ball were also looking for moving violations of the Vehicle Code and "any mechanical violations that [they] could see from [sic] the rear of the vehicle, anything that might be wrong with the plates, the lighting equipment, the windows and so forth." These might include a driver's failure to turn on his lights, "license plate

1  light or any coverings, as well as whether the registration's expired and whether you can clearly
2  see the plate and the registration tabs.

3      At approximately 12:20 a.m., Officer Ruffin's attention was drawn to a Fiat driving
4  directly ahead of him in the number two lane.  The Fiat's right side tires crossed over the broken
5  white line separating the number two and three lanes; although he did not put this information in
6  his report, Officer Ruffin also testified later that the Fiat "remained on the white line for
7  approximately 1.5 to 2 seconds."  The Fiat then sharply swerved to the left and back to the center
8  of its lane.  The sharp and jerky steering movements led Officer Ruffin to believe the driver may
9  have been under the influence of alcohol or was distracted.

10      Officer Ruffin then focused his attention on the Fiat.  Because he was already driving at a
11  higher speed than the Fiat, he had already started to approach it from behind, and he continued to
12  close the distance between the two vehicles.  As he approached the Fiat, he noticed that the palm
13  tree design of its rear license plate cover partially obscured the registration tags on the license
14  plate, such that Officer Ruffin could not discern the expiration year of the vehicle's registration.
15  He also could not be certain whether the tag was orange, which was the appropriate year-date
16  sticker color for a vehicle with a valid 2013 registration.  The palm trees on the license plate cover
17  also partially obscured the registration month on the left side of the plate.  Officer Ruffin could not
18  discern the color of the registration tab with certainty.  Because he suspected that the driver of the
19  Fiat was in violation of Vehicle Code section 5201(b), he initiated a traffic stop.

20      Officer Ruffin activated his enforcement lights and conducted a traffic stop of the vehicle.
21  The driver of the vehicle, later identified as Kimberly Garcia, complied and pulled over to the side
22  of the road.  Officer Ruffin approached the driver side window while Officer Ball approached the
23  passenger side door.

24      Officers Ruffin and Ball detected the smell of marijuana coming from the vehicle.  After
25  further investigation and a search of the vehicle, the two officers recovered 15 pounds of
26  marijuana, a loaded Raven Arms .25 caliber semi-automatic pistol, a loaded AK-47 assault rifle,
27  and a bag containing three grams of methamphetamine.
28

Defendants Bell and Dunn now move to suppress the evidence seized during the warrantless search of the Fiat, claiming that the CHP did not have sufficient legal cause to initiate a traffic stop.[1]

## II.  ANALYSIS

### A.  The Driving Observed By Officer Ruffin Did Not Provide A Legal Basis To Initiate A Traffic Stop

The government argues that the swerving Officer Ruffin observed was sufficient to permit him to initiate a traffic stop.  Opp. at 4–6.  The government's position is inconsistent with controlling Ninth Circuit authority.

In 2002, the Ninth Circuit held that under California law, police officers cannot pull over a driver for swerving unless it is both pronounced and continues over a "substantial distance." United States v. Colin, 314 F.3d 439, 446 (9th Cir. 2002).  The officers in Colin saw a driver drift to the right and let his right tires follow the fog line for about ten seconds.  Id. at 441.  The driver then changed lanes to the left and drifted to the left side of the new lane, allowing his left tires to follow the solid yellow line for about ten seconds.  Id.  The officers pulled the car over for the possible violations of driving under the influence and lane straddling.  Id.  California's lane-straddling law requires that drivers "drive as nearly as practical entirely within a single lane."  Cal. Vehicle Code § 21658(a).  The court in Colin held that the officers lacked justification for a traffic stop because the weaving was not pronounced and did not continue over a "substantial distance." Colin, 314 F.3d at 445–46.

The evidence in this case provides even less justification for a traffic stop than the facts in Colin.  Here, the Fiat remained on the white line for at most two seconds before swerving back into its lane.  Its tires may also have briefly crossed over the lane line.  This is neither the "pronounced weaving" nor the weaving for a "substantial distance" required to initiate a traffic stop.

---

[1] Defendants do not contest the lawfulness of the officers' conduct once the officers made contact with the Fiat.

3

**B.  The Fiat's License Plate Cover Provided A Legal Basis To Initiate A Traffic Stop**

Defendants' driving was not the only basis for the officers' traffic stop, however. Officer Ruffin also testified, and his report reflects, that the CHP pulled Ms. Garcia over because her rear license plate cover partially obscured the registration tags on her license plate. The video and photographic evidence supported this testimony.

Defendants do not dispute that Garcia's license plate cover partially obscured the text on Garcia's registration tabs. Instead, they argue that (1) Garcia's license cover complied with state law; and (2) the officers could not see the frame until after they initiated the traffic stop.

**1.  Garcia's License Plate Cover Violated Vehicle Code Section 5201**

California Vehicle Code section 5204(a) states that "a tab shall indicate the year of expiration and a tab shall indicate the month of expirations." Section 5201(b) provides, in relevant part:

> (b) A covering shall not be used on license plates except as follows:
>
> \*   \*   \*
>
> (2) The installation of a license plate security cover is not a violation of this subdivision if the device does not obstruct or impair the recognition of the license plate information, including, but not limited to, the issuing state, license plate number, and registration tabs, and the cover is limited to the area directly over the top of the registration tabs. No portion of a license plate security cover shall rest over the license plate number.

Here, the palm trees on the license plate cover were not "limited to the area directly over the top of the registration tabs" as required by the statute. The pictures admitted at the hearing, and the picture reprinted in Defendants' motion, clearly show that the palm trees on Garcia's license cover obscured text on the registration tabs. Indeed, Defendants concede that the palm trees covered the year of the registration. Def. Mot. at 13:12–15. Therefore, the license plate cover was in violation of the California Vehicle Code.

Defendants dispute this conclusion. They argue that Garcia's license cover complied with section 5201 because the Department of Motor Vehicles changes the color of the registration tag each year, the color on the year of registration was "clearly visible," Veh. Code, § 5201(a), and because the license frame did not obscure the color indicating the year of registration, it did not "impair recognition of the . . . registration tabs," Veh. Code, § 5201(b)(2). Defendants essentially

4

argue that a license plate cover is lawful as long as any portion of the registration year tag is visible.

This interpretation is not consistent with the California legislature's use of the phrase "impair the recognition of," which denotes "making recognition more difficult."[2] Had the legislature intended to prohibit only obstruction in its entirety, it would have used language such as "prevent the recognition of the license plate information" or "entirely impair the recognition of the license plate information." Defendants' interpretation also conflicts with the legislature's command that "the cover [must be] limited to the area directly over the top of the registration tabs." Finally, Defendants' interpretation defies common sense, since it would permit drivers to obscure the entirety of the registration year, so long as some portion of the tag were visible.

The Court concludes that Garcia's license plate cover was in violation of section 5201(b).

### 2. Officer Ruffin Was Able To Observe The Vehicle Code Violation

Defendants next contend that, even if the license plate cover violated the Vehicle Code, Officer Ruffin would not have been able to see the Fiat's obstructed registration tags given the distance between his patrol car and the rear of the Fiat. Having reviewed the video and considered the distance between the two cars, the Court agrees that Officer Ruffin would not have been able to see the *extent* of the obstruction. But the evidence is more than sufficient to establish that he could see the *fact* of the obstruction, and that he therefore had reasonable suspicion to initiate a stop.

"[T]he Fourth Amendment requires only reasonable suspicion in the context of investigative traffic stops," United States v. Lopez-Soto, 205 F.3d 1101, 1105 (9th Cir. 2000), not probable cause.[3] "Reasonable suspicion is formed by specific, articulable facts which, together

---

[2] To "impair" means "to damage or make worse by or as if by diminishing in some material respect," not to eliminate or prevent. Merriam Webster Online Dictionary, http://www.merriam-webster.com/dictionary/impair, retrieved Jan. 23, 2014.

[3] Like the present case, Lopez-Soto involved a suspected violation of the laws concerning vehicle registration stickers. Id. at 1105.

with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." Id. (citation omitted). The standard applies even if the only suspected criminal conduct at issue is an infraction. United States v. Willis, 431 F.3d 709, 717 (9th Cir. 2005).

Because Officer Ruffin had a reasonable suspicion that Garcia's vehicle was in violation of Vehicle Code section 5201, he was legally entitled to initiate a traffic stop, and the resulting search was lawful.

### III. CONCLUSION

For the foregoing reasons, the motion to suppress is denied.

**IT IS SO ORDERED.**

Dated: February 4, 2014

_____
JON S. TIGAR
United States District Judge